**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOMAS S., ) | |
| ) | |
| Plaintiff, ) | No. 19 cv 0726 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| ANDREW M. SAUL, Commissioner of the ) | |
| Social Security Administration[1], ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tomas S.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability benefits. Plaintiff has filed a Memorandum in Support of Reversing the Decision of the Commissioner of Social Security, which the Court construes as a motion for summary judgment [dkt. 18]; the Commissioner has filed a cross-motion for summary judgment [dkt. 22]. As detailed below, Plaintiff's motion for summary judgment [dkt. 18] is GRANTED and the Commissioner's motion for summary judgment [dkt. 22] is DENIED.

**I. Background**

    **a. Procedural History**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 9, 2015, alleging a disability onset date of December 1, 2014, due to depression and difficulty sleeping. [Administrative Record ("R.") 180-81, 184-87.] Plaintiff's claims were denied initially and again upon reconsideration. [R. 112-16, 119-24.] Following these denials, Plaintiff and his attorney appeared at a June 22, 2017 Administrative Hearing before Administrative Law Judge ("ALJ")

---

[1]    As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

Margaret Carey. [R. 33-79.] On September 29, 2017, ALJ Carey issued an unfavorable decision. [R. 15-26.] Plaintiff requested and was denied Appeals Council review [R. 1-3], making the Decision of the Appeals Council the final decision of the Commissioner. Plaintiff filed the instant action on February 5, 2019, seeking review of the Commissioner's decision. [Dkt. 1.]

    b.    **Relevant Medical History**

Plaintiff was born in 1953 and was 61 years old on his alleged disability onset date. [R. 24.] Plaintiff has a bachelor's degree in social work. [R. 39-40.] Plaintiff testified that he sought DIB and SSI because he is a senior citizen and although he receives Social Security Retirement Benefits, this is not enough money to support himself. [R. 48.]

Because the ALJ found Plaintiff had two severe impairments (*i.e.*, depressive disorder and carpal tunnel syndrome), the Court limits the relevant medical background discussed herein to these two ailments. Although Plaintiff claimed a disability onset date of December 1, 2014 (due to "depression and can not sleep" [R. 214]), Plaintiff did little to seek treatment until approximately a year after this date, and even then did not abide by providers' recommendations for treatment of either his depression or later-asserted carpal tunnel pain.

The records show Plaintiff was diagnosed with depression on October 29, 2017. [R. 334.] At this visit to his physician, he reported feeling depressed since April 2015. [R. 333, 379.] He was started on prescription Sertraline for his depression. [R. 334.] His mental status examinations have revealed a depressed mood at times, but a pleasant mood at other times, as well as intact judgment and insight. [R 346, 353, 364, 370.] On April 13, 2016, Plaintiff reported to his physician that he stopped taking Sertraline in February because he wanted to see how he would do without the medications and that he did not feel as if his mood had worsened at all without the medication. [R. 369.] However, he reported sleeping a lot, lack of interest in doing things, and forgetting things like his keys and wallet, so he was prescribed Venlafaxine. [R. 369-71.] In March 2017, Plaintiff again reported to his physician

that he did not think he was improving on medication or with therapy so he'd unilaterally stopped these interventions. [R. 379.] Although both consultative examiners ("CE") took issue with Plaintiff's credibility,[3] they both agreed with a diagnosis of depression for Plaintiff, but found it to be a nonsevere impairment. [R. 88-90; 97-99.]

As to Plaintiff's carpal tunnel syndrome, Plaintiff was diagnosed with carpal tunnel syndrome and prescribed wrist splints on October 28, 2015. [R. 21, 335.] By September 2016, he reported worsening of his bilateral hand numbness; he also reported that he did not yet obtain the prescribed wrist splints. *Id.* Wrist splints were again prescribed to Plaintiff for use at bedtime *Id.* In mid-October 2016, Plaintiff reported that his carpal tunnel syndrome was feeling better after he was given Naproxen two weeks before. *Id.* However, on November 8, 2016, he reported that the Naproxen was not relieving the pain in his hands and he had a loss of flexibility in his hands. *Id.* He was again encouraged to purchase wrist splints. Similarly, on March 22, 2017, he was again prescribed wrist splints for use at bedtime because he complained of bilateral numbness and pain. [R. 333-34.] At that time, his physician implored him to "[p]lease try to get the wrist splints and wear them at night. This may help with your daytime numbness and pain" and warned Plaintiff that the wrist splints are "the next step before surgery which has its own risks." [R. 353.] At the time of the June 22, 2017 Administrative Hearing, Plaintiff still had not obtained the wrist splints, but stated he expected to have them in the following two weeks. [R. 52.] Plaintiff began treatment with an occupational therapist (ostensibly for his carpal tunnel pain) the day prior to his administrative hearing. [R. 34; *see also*, R. 407.]

c. **The ALJ's Decision**

On September 29, 2017, the ALJ issued a written decision denying Plaintiff disability benefits.

---

[3] According to one consultative examiner, Plaintiff "gave highly suspect responses at the CE MSE (mental status examination). He was unable to do digits forward or backwards (he was able to recall one digit forward and no digits in reverse order). He stated that Bush was the current president (Obama had been president for 7 years at the time of the examination). He indicated that 2 + 1 is 2. When asked the color of an orange, he responded 'green.'" [R. 99; *see also*, R. 325-28.]

3

[R. 15-26.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2014 through his date last insured. [R. 18.] At Step Two, the ALJ found that Plaintiff had the severe impairments of depressive disorder and carpal tunnel syndrome. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 18-20.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform medium work with the following limitations: he can frequently handle and occasionally finger items; he can perform simple, routine work in a low stress environment defined as having few if any changes in the work setting and few if any simple work-related decisions; and he can have no interaction with the public. [R. 20.] At Steps Four and Five, the ALJ found Plaintiff incapable of performing any of his past relevant work, but capable of performing several other jobs existing in significant numbers in the national economy. [R. 24-25.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 25.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or, in this case, the combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). While a "not severe" impairment(s) standing alone may

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. S.S.R. 96-8p, 1996 WL 374184, *5 (July 2, 1996). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate

discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff lodges several complaints with the ALJ's opinion, key among them that the ALJ's RFC finding, as it relates to Plaintiff's depression, is allegedly not supported by substantial evidence because there was no medical opinion of record that supported the RFC. The Court agrees.

After giving only "some weight" to the opinions of the consultative examiners who both determined that Plaintiff's mental condition was not severe, the ALJ acknowledged that evidence added to the record after their review changed the picture of Plaintiff's depression, establishing that it was severe. [R. 23.] Although there are only 75 pages of medical records from Plaintiff's treaters at Erie Humboldt Park Health Center, these general medical records contained enough of a mental health impression for the ALJ to categorize Plaintiff's depressive disorder as a severe impairment. [R. 332-406.] As Plaintiff did not submit these records until after the consultative examinations in this matter, neither of the consultative examiners ever saw these records and were unable to consider them when formulating their opinions as to whether and how Plaintiff's depressive disorder impeded his day-to-day-activities. Thus, when the ALJ determined that Plaintiff suffered from a severe depressive disorder, and determined that this mental limitation could be accommodated by restriction to simple work in a lower stress environment without public interaction, she crafted this RFC without a medical basis.

Based on the Relevant Medical History articulated by the Court above (Section I(b), *supra*), although the Court is not convinced the ALJ came to the wrong ultimate conclusion concerning Plaintiff's disability in this case, the RFC the ALJ crafted in this case is cause for remand. It was the ALJ's duty to: (1) develop the record to a sufficient degree to enable her to construct a reasonable RFC based on objective evidence (including, if necessary, calling or recalling a medical advisor and/or

obtaining clarification of the record); and (2) articulate clearly how and why that finding was reached. *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 849-50 (N.D. Ill. 2006). However, instead of relying on any medical opinion concerning the effects of Plaintiff's depressive disorder (or seeking out one that did), it appears the ALJ impermissibly "played doctor" and drafted the RFC in this case based on her independent assessment of Plaintiff's mental health records. *Hemphill v. Barnhart*, 2002 WL 1613721, at *9 (N.D. Ill. July 18, 2002) (citing *Wilkins v. Sullivan*, 889 F.2d 135, 140 (7th Cir.1989) for the holding that the "Seventh Circuit has warned ALJ(s) not to succumb to the temptation of playing doctor or to make independent medical findings")). This created an evidentiary deficit which the ALJ was unable to remedy by pointing to specific evidence to substantiate her conclusion. *Suide v. Astrue*, 271 Fed. Appx. 684, 689-90 (7th Cir. 2010); *see also*, *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (reversible error where "ALJ did not identify any medical evidence to substantiate her belief" plaintiff was capable of performing demands of the RFC)). Thus, the ALJ's decision lacks sufficient evidentiary support for the Court to uphold it and we remand on this basis. *Lopez*, 336 F.3d 535, 539.

The Court can find no support to indicate that such an error (*i.e.*, the ALJ "playing doctor") is a harmless error, and thus, we remand with specific instructions to allow the consultative examiners to review Plaintiff's Erie Humboldt Park Health Center medical records so they may more completely assess Plaintiff's mental health status and include this assessment within their opinions so the ALJ may have a medical opinion on which to rely concerning the effects and limitations of Plaintiff's depressive disorder.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 18] is GRANTED and the Commissioner's motion for summary judgment [dkt. 22] is

7

DENIED. The ALJ is to be provided a copy of this Memorandum Opinion and Order.

Entered: 3/27/2020

_____
Susan E. Cox,
United States Magistrate Judge